Adam F. Gambel (Bar No. 95152)
GAMBEL LAW
235 Montgomery St., Suite 1220
San Francisco, CA  94104
Tel:  (415) 392-3100
Email: agambel@gambellaw.com

Attorney for Plaintiff
UNIVERSIDAD NACIONAL
AUTÓNOMA DE MÉXICO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNIVERSIDAD NACIONAL AUTÓNOMA DE MÉXICO, a Mexico corporation,<br><br>                   Plaintiff,<br><br>         v.<br><br>ARRAYIT CORPORATION, a Nevada corporation, MARK SCHENA, an individual, and RENE SCHENA, an individual,<br><br>                   Defendants. | Case No.<br><br>COMPLAINT FOR BREACH OF CONTRACT; MONEY HAD AND RECEIVED; CONVERSION; FRAUDULENT CONCEALMENT; WITHHOLDING AND AIDING THE WITHHOLDING OF PROPERTY; UNFAIR COMPETITION; AIDING AND ABETTING UNFAIR COMPETITION<br><br>DEMAND FOR JURY TRIAL |

Plaintiff, for its claims against defendants, complains and alleges as follows:

<u>SUMMARY OF ACTION</u>

1.        In 2014-15, plaintiff Universidad Nacional Autónoma de México ("UNAM") , a prestigious national research university in Mexico, was considering the purchase of certain life sciences research equipment.  Defendant Arrayit Corporation ("Arrayit") held itself out as a manufacturer who could and would provide such equipment.  In September 2015, Arrayit and defendant Rene Schena prepared and delivered to UNAM a price quotation and proposed contract for certain specific DNA research equipment.  On November 13, 2015, UNAM paid Arrayit's invoice for the full purchase price of the equipment in advance as requested.  Arrayit

- 1 -

COMPLAINT

never delivered the equipment to UNAM and, despite numerous demands and without any valid legal excuse or reason, never refunded most of the money UNAM had paid for it.

2.      At the time Arrayit accepted UNAM's payment and afterwards, Arrayit, acting through its chief executive officer defendant Rene Schena and its president defendant Mark Schena (hereinafter jointly "the Schenas"), either knew Arrayit could not fill the order within the approximately eight-week delivery term or at any reasonable time thereafter or did not intend to fill the order in that timeframe or at any time.  Arrayit and the Schenas concealed those facts and other facts from UNAM in order to dissuade UNAM from demanding its money back or from taking legal action to recover it.  For years after UNAM had placed the order, had paid in full, and patiently had waited, Arrayit and the Schenas continued to conceal those facts for the purpose of keeping UNAM's money.  Arrayit and Mark Schena made repeated invalid excuses for non-delivery and made further false promises regarding the imminent future delivery of the equipment or full repayment in the alternative, none of which promises was kept.

3.      In November 2016, a full year after UNAM had paid in full, Mark Schena and Arrayit promised in writing either to ship the equipment to UNAM by December 31, 2016, or to refund UNAM's money, but then neither promise was kept.  In January 2017, following repeated inquiries, Mark Schena and Arrayit reported that UNAM's equipment was complete and ready for shipment from Europe (even though the contract required it to be "made in USA").  However, the equipment never was shipped to, released to, or received by UNAM despite demand for access to it, even in Europe.  Instead, more than a month later, Mark Schena and Arrayit stated that Arrayit had sold the Equipment manufactured for UNAM to a third party.  Arrayit still did not refund UNAM's money.  Arrayit has neither delivered the Equipment nor returned most of UNAM's money despite several demands, causing Plaintiff the loss of the $126,515 it paid and the other damages alleged herein, minus $20,500 that Arrayit repaid in early 2019 after receiving a demand letter from UNAM's counsel.

///

///

///

PARTIES

4.      Plaintiff Universidad Nacional Autónoma de México ("UNAM") is and at all relevant times was a public research university organized as a public corporation of full legal capacity under the laws of Mexico (the United Mexican States) with its principal place of business in Mexico City.

5.      Defendant Arrayit Corporation ("Arrayit") is a Nevada corporation which, Plaintiff is informed and believes and based thereon alleges, maintains its principal place of business in Santa Clara County, California.

6.      Defendant Mark Schena is an individual who, Plaintiff is informed and believes and based thereon alleges, resides in Santa Clara County, California, and at all relevant times was the president or other corporate officer of Arrayit.

7.      Defendant Rene Schena is an individual who, Plaintiff is informed and believes and based thereon alleges, resides in Santa Clara County, California, and is and at all relevant times was the chief executive officer or other corporate officer of Arrayit.

JURISDICTION

8.      The Court has jurisdiction over this action under 28 U.S.C. §1332(a)(2),  as there is complete diversity of citizenship between Plaintiff UNAM, a citizen or subject of a foreign state (Mexico), and all Defendants, who are citizens of California and Nevada, and the amount in controversy exceeds $75,000.

INTRADISTRICT ASSIGNMENT

9.      Assignment to the San Jose Division is appropriate because a substantial part of the events or omissions which give rise to the claims occurred in Santa Clara County.  Venue in this District is proper under 28 U.S.C. §§1391(b)(1) and (2) because, Plaintiff is informed and believes, defendant Arrayit is a Nevada corporation which maintains its principal place of business in Santa Clara County and Mark Schena and Rene Schena are citizens of California who reside in Santa Clara County.

///

///

COMPLAINT

GENERAL ALLEGATIONS

10.      UNAM is a renowned public university with campuses in Mexico City, Cuernavaca, and elsewhere in Mexico.  Two of UNAM's many educational and research organizations are its Instituto de Biotecnología ("IBT") (Institute of Biotechnology) and its Instituto de Fisiología Celular ("IFC") (Institute of Cellular Physiology), each managed by UNAM faculty.  In 2014, UNAM attempted to purchase certain equipment to be used in its research activities at IBT and IFC, specifically Arrayit's NanoPrint LM60 Microarray Printer, a microarray printer which produces DNA or protein microarrays for various applications in life science research, and related training, support and warranty (hereinafter "the Equipment").

11.      In September 2014, UNAM issued a purchase order for the Equipment to a distributor, Valley International Corporation ("Valley") of Austin, Texas.  Valley required UNAM to pay Valley the entire purchase price of $126,515 in advance, which UNAM paid in late 2014. On information and belief, Valley in turn ordered the Equipment from Arrayit.

12.      From late 2014 through approximately the summer of 2015, UNAM and Valley waited in vain for Arrayit to deliver the Equipment.  Valley informed UNAM that Arrayit was not responding to calls or requests for updates about the Equipment.  Eventually, around mid-2015, Valley informed UNAM that Arrayit was requesting Valley to pay 50% of the purchase price in advance of shipment.  Valley informed UNAM that, due to its concerns about Arrayit's financial condition, Valley would not make that advance payment to Arrayit.  As one excuse for not shipping the Equipment, Arrayit asserted that 50% advance payment by Valley to Arrayit was required.  Arrayit never shipped the Equipment to Valley, UNAM and Valley cancelled their transaction, and Valley refunded to UNAM all the money UNAM had paid in advance for the Equipment.

13.      UNAM still wanted to purchase the Equipment, so in early September 2015, after the planned purchase from Valley was cancelled, Dr. Jorge Ramirez Salcedo, on behalf of UNAM, contacted Rene Schena about UNAM purchasing the Equipment directly from Arrayit. On or around September 4, 2015, Ms. Schena sent Dr. Jorge Ramirez Salcedo via email a document titled "Confidential Price Quotation" dated September 4, 2015.  This document states

that it was authored by Rene Schena and was prepared especially for UNAM's IFC, offering the Equipment for sale directly to UNAM in the form of a proposed contract requiring a 50% down payment in advance and promising delivery in approximately eight weeks (hereinafter the "2015 Arrayit Contract", a true and correct copy of which, omitting some descriptive attachments, is attached as Exhibit A hereto and incorporated herein by reference).

14.　　Around the same time, UNAM contacted Productos y Equipos Biotecnologicos S.A. de C.V. ("Probiotek"), which acted as an agent of Arrayit in Mexico.  Probiotek also sent UNAM a pro forma quote for purchasing the Equipment from Arrayit, dated September 9, 2015, indicating that the price was to be paid 100% in advance directly to Arrayit and that delivery time would be eight to ten weeks.  Arrayit had represented that Probiotek was an authorized distributor of its microarray product line, but Probiotek in fact acted simply as Arrayit's agent or intermediary in Mexico in connection with UNAM's direct purchase from Arrayit.  In 2018, when UNAM sued Probiotek (but not Arrayit) in Mexico for non-delivery of the Equipment, a Mexican court found that UNAM's agreement to purchase the Equipment was with Arrayit, not with its agent Probiotek.

15.　　Through Probiotek, Arrayit sent UNAM its Invoice TC17471, dated September 30, 2014, and signed by Rene Schena, for the Equipment at the adjusted price of $126,515 (hereinafter "Arrayit's Invoice", a true and correct copy of which is attached as Exhibit B hereto and incorporated herein by reference). The invoice was dated as of 2014 rather than 2015 at UNAM's request because the UNAM funds specifically allocated to the attempted 2014 purchase through Valley, which previously had been paid to and then returned by Valley, were to be used for the 2015 purchase directly from Arrayit.

16.　　In the September 4, 2015 email from Ms. Schena to UNAM delivering the 2015 Arrayit Contract as an attachment, Ms. Schena responded as follows to UNAM's earlier indication that UNAM might have to obtain a bond to provide some protection to UNAM since its earlier attempt to make the purchase through Valley had failed:

///

///

If there is a bond involved, would Arrayit still receive 50% of the payment in advance?  It is important for us to know how much of the manufacturing costs we have to finance, or whether we have the customer's help.  (It will be delivered fastest if we have your help.)

17.     On or around November 13, 2015, UNAM paid the full $126,515 invoiced by Arrayit from UNAM's bank account by wire directly to the Arrayit bank account in Santa Clara, California indicated on the invoice.  By accepting and retaining UNAM's direct payment, Arrayit agreed to sell the Equipment to UNAM on the terms stated in the 2015 Arrayit Contract, which provides: "Upon acceptance of this offer by *Buyer* [UNAM], this document, including all its attachments, will become a binding agreement between the parties."

18.     UNAM alleges on information and belief that, at the time Arrayit invoiced and accepted payment from UNAM and thereafter, Arrayit and the Schenas knew that Arrayit likely could not deliver the Equipment to UNAM within the approximately eight weeks promised and/or did not intend to deliver the Equipment to UNAM in that time frame.  At that time and afterwards, Arrayit was in a challenging financial condition and used the prepayment from UNAM for purposes other than sufficiently funding the manufacture of UNAM's Equipment order.  At that time and afterwards, Arrayit and the Schenas concealed those facts from UNAM in order first to obtain UNAM's money and then to dissuade UNAM from taking action to recover its money.  For more than a year after UNAM paid Arrayit's Invoice in full, Arrayit and Mark Schena continued to conceal those facts and made repeated invalid excuses for non-delivery and further false promises regarding future delivery of the equipment or full repayment in the alternative, none of which promises was kept and many of which promises were known by defendants to be untrue or unlikely but were made to forestall action by UNAM to recover its money.

19.     By letter dated March 9, 2016, addressed "Dear Arrayit Customer" and provided to UNAM, Mark Schena and Arrayit alluded to a "one-time shipping issue related to our new $5,000,000 revolving credit line", stating that "[s]hipping will commence beginning March 18th as we re-stock our components and reagents inventory and ramp up production."  At

that time, though UNAM's Equipment delivery was more than a month late, the message was that the problem was solved and shipment was imminent.

20.     More than six months later, the Equipment still had not been shipped.  By letter dated September 22, 2016, again addressed "Dear Arrayit Customer" and provided to UNAM, Mark Schena and Arrayit identified the Equipment as one of several products "impacted due to the availability of motion control components from our international suppliers", promising shipment as quickly as possible.  A week later, by letter dated September 30, 2016, this time addressed specifically to UNAM, Mark Schena and Arrayit stated that UNAM's Equipment "is being assembled and is currently scheduled to ship by October 28, 2016 pending the arrival of critical components from our [international] suppliers" and that "delivery of your system is guaranteed by the end of this year at the very latest and will hopefully ship more sooner as parts arrive and our engineers complete assembly and testing."  Two and a half months later, on November 15, 2016, Mark Schena sent UNAM another letter, again claiming a delay in receiving unspecified parts from suppliers and stating "Based on current parts lead times, we expect to deliver your order in full by no later than December 31, 2016.  If your order is not shipped by this date, we will refund your order in full".  That date passed, and Arrayit did neither of the alternatives it promised.

21.     In early January 2017, following repeated inquiries to Arrayit by Probiotek about the status of UNAM's Equipment, which had not been shipped by the end of 2016 as most recently promised, Arrayit responded to Probiotek regarding UNAM's Equipment: "Your shipment is complete.  Our shipping department is arranging shipment from our European office now that the holidays and New Year are complete.  We are confident of a January ship date."  The Equipment was not shipped in January.  Moreover, the contract provided that "[t]his product is made in USA" and it was to be shipped FOB Sunnyvale, not from Europe.  Nonetheless, by letter dated February 10, 2017, Probiotek conveyed to Arrayit UNAM's offer to expedite shipment by completely handling itself the exportation from Europe and the importation into Mexico and requested the location of the Equipment and the contact information required to do so.  Arrayit did not provide that information or access to the Equipment.  Mr. Schena then stated

that it had sold the Equipment to a third party, claiming that there had been a request to cancel UNAM's order (unknown to and never authorized by UNAM). He also stated that other such Equipment was "moving through production" and would be available in a few weeks. As late as May 2017, UNAM continued to demand from Arrayit delivery of the Equipment, but to no avail. UNAM also demanded proof of the manufacture of the Equipment. Arrayit simply stopped responding and provided no information, keeping the $126,515 UNAM had paid in November 2015 as well as any amount received from the purported sale to a third party in early 2017.

22. In December 2018, through its legal counsel, UNAM demanded from Arrayit repayment of the $126,515 in full plus interest, failing which UNAM indicated it would commence legal proceedings to recover damages. In January 2019 Rene Schena and Arrayit unilaterally sent UNAM (through its agent Probiotek) a letter proposing to refund UNAM's money on a weekly schedule extending over a period of six months ending July 4, 2019, again fully acknowledging Arrayit's obligation to refund the money. At the same time and without agreement by UNAM, Arrayit made a payment of $2,500 by wire transfer into UNAM's bank account. UNAM expressly declined in writing to accept Arrayit's proposal or the payments as any form of agreement or compromise but did propose and enter into a written tolling agreement with all Defendants covering UNAM's claims against each of them, effective from December 21, 2018 through July 15, 2019 ("the Tolling Agreement"). Attached hereto as Exhibit C and incorporated herein by reference is a true and correct copy of the Tolling Agreement.

23. After payments by Arrayit to UNAM totaling $20,500 over six weeks in January and February 2019, Arrayit stopped making payments without any notice, explanation, or excuse. In July 2019, UNAM again demanded payment from Arrayit and made a proposal for payment of some damages over time coupled with an amended tolling agreement with all defendants, but none of the defendants ever responded. By its own terms, UNAM's proposal expired, leaving UNAM with no practical choice but to file this action to recover the full amount of its damages.

///

///

## FIRST CLAIM FOR RELIEF

### Breach of Contract

(Against Arrayit)

24.     Plaintiff realleges and incorporates herein by reference paragraphs 1 through 23 above, inclusive, as though fully set forth herein.

25.     By means of the 2015 Arrayit Quote and UNAM's paying Arrayit directly the sum of $126,515 on or around November 13, 2015, Arrayit and UNAM entered into a written contract pursuant to which UNAM agreed to purchase and Arrayit agreed to sell and deliver the Equipment for $126,515.

26.     UNAM did everything required of it under the contract with Arrayit except for any obligations waived or excused.

27.     Arrayit breached the contract by failing to deliver the Equipment to UNAM.

28.     As a legal and proximate result of Arrayit's breach of contract, UNAM has been damaged in the sum of $126,515 plus interest, minus a credit of $20,500 paid by Arrayit to UNAM in early 2019.

WHEREFORE, plaintiff prays judgment as hereinafter set forth.

## SECOND CLAIM FOR RELIEF

### Money Had and Received

(Against Arrayit)

29.     Plaintiff realleges and incorporates herein by reference paragraphs 1 through 28 above, inclusive, as though fully set forth herein.

30.     On or around November 13, 2015, UNAM paid Arrayit and Arrayit received from UNAM the sum of $126,515 that was intended and promised by Arrayit to be used for the benefit of UNAM in connection with Arrayit's manufacture and delivery of the Equipment within approximately eight weeks thereafter.  Arrayit did not use that money for the benefit of UNAM, did not ever deliver the Equipment to UNAM, has not returned most of the money to UNAM despite demand, and thus became indebted to UNAM in the amount of $126,015, which

COMPLAINT

indebtedness Arrayit acknowledged in writing or otherwise on or about November 15, 2016, January 17, 2019, and at other times within the past two years.

31.     As a legal and proximate result, UNAM has been damaged in the amount of $126,515 plus interest, minus a credit of $20,500 repaid by Arrayit in early 2019.

WHEREFORE, plaintiff prays judgment as hereinafter set forth.

THIRD CLAIM FOR RELIEF

Conversion

(Against Arrayit)

32.     Plaintiff realleges and incorporates herein by reference paragraphs 1 through 31 above, inclusive, as though fully set forth herein.

33.     On or around January 2, 2017, Arrayit and Mark Shena acknowledged that the Equipment ordered and already paid for by UNAM was "complete" and that Arrayit was "arranging shipping" from Europe, despite the fact that the Equipment was represented in the contract as "made in USA" and Arrayit was obligated to deliver "FOB Sunnyvale, California". The Equipment at that point or earlier was identified to the contract as admitted by Arrayit, and UNAM had an immediate right to possess it.  On February 10, 2017,  Probiotek informed Arrayit that to expedite matters, UNAM would handle the export of the Equipment from Europe and asked for the location of the equipment and the necessary contact information in order for UNAM to arrange to take possession.  Arrayit later stated that it had sold UNAM's Equipment to another customer without Arrayit's permission.  Thus, in the alternative and on information and belief, UNAM alleges that Arrayit had possession or control of UNAM's Equipment in January 2017 and intentionally and substantially interfered with the Equipment and UNAM's right to possess it by failing to deliver it to UNAM, as demanded by and promised to UNAM, by not shipping it or providing its location or access to it so that UNAM could take possession of it as demanded, and instead, without UNAM's consent, by keeping UNAM's Equipment or selling it to a third party and keeping the proceeds or by otherwise converting it to Arrayit's own use and benefit.

COMPLAINT

34.     As a legal and proximate result, UNAM has been damaged in the amount of $126,515 plus interest, minus a credit for $20,500 repaid by Arrayit in early 2019.

35.     Defendants' conduct in taking the actions and in failing to act as alleged was malicious, oppressive or in reckless disregard of Plaintiff's rights, and Plaintiff is entitled to punitive or exemplary damages to punish Defendants for and to deter such conduct.

WHEREFORE, plaintiff prays judgment as hereinafter set forth.

FOURTH CLAIM FOR RELIEF

Fraudulent Concealment

(Against Arrayit, Rene Schena and Mark Schena)

36.     Plaintiff realleges and incorporates herein by reference paragraphs 1 through 35 above, inclusive, as though fully set forth herein.

37.     By means of the 2015 Arrayit Quote, a "Confidential Price Quotation Prepared Especially For" UNAM by Rene Schena and Arrayit, Arrayit promised to sell and deliver Equipment "made in USA" to UNAM while knowing or strongly suspecting but concealing that Arrayit could not or would not deliver the Equipment as contracted, for the purpose of getting UNAM to pay all or part of the price in advance.  UNAM did so on November 13, 2019, in reliance on the 2015 Arrayit Quote and on Ms. Schena's representation that UNAM's "help" in the form of advance payment would result in the fastest delivery.  That promise by Ms. Schena and Arrayit to sell and deliver Equipment "made in USA" within approximately eight weeks was false and fraudulent, as it was made either without the intention to perform it or with knowledge that Arrayit likely would be unable to perform it within that time frame or at any reasonable time thereafter.  Arrayit and Rene Schena concealed those facts from UNAM in order to induce UNAM to enter into a contract and to make a substantial payment in advance.  From 2016 through 2018,  in order to dissuade UNAM from demanding its money back or from taking legal action to recover it, Mark Schena and Arrayit, in letters and messages to UNAM and Probiotek, repeatedly promised delivery in the near future and in November 2016 promised in the alternative to refund UNAM's money by the end of 2016.

///

38.     UNAM relied on those false promises and representations in entering into the Arrayit Contract and making its 100% payment in advance.  As a legal and proximate result, given Arrayit's failure to deliver the Equipment, UNAM has been damaged in the amount of $126,515 plus interest, minus a credit of $20,500 repaid by Arrayit in early 2019.

39.     Defendants' conduct in taking the actions and in failing to act as alleged was malicious, oppressive or in reckless disregard of Plaintiff's rights, and Plaintiff is entitled to punitive or exemplary damages to punish Defendants for and to deter such conduct.

WHEREFORE, plaintiff prays judgment as hereinafter set forth.


FIFTH CLAIM FOR RELIEF

Withholding and Aiding Withholding of Property

Penal Code §496(a) & §496(c)

(Against Arrayit, Mark Schena, and Rene Schena)

40.     Plaintiff realleges and incorporates herein by reference paragraphs 1 through 39 above, inclusive, as though fully set forth herein.

41.     Arrayit has withheld UNAM's money obtained by theft as defined in Penal Code §484 and the Schenas have aided Arrayit in such withholding of money obtained by Arrayit from its owner UNAM, as follows:

a.     Arrayit and Rene Schena knowingly and by design defrauded UNAM of $126,515 by false representation or pretense in the form of the 2015 Arrayit Quote, promising delivery to UNAM of Equipment "made in USA" within approximately eight weeks after UNAM's acceptance, knowing that was not probable or possible, and by Rene Schena's and Arrayit's separate September 4, 2015 representation that the Equipment would be delivered fastest if UNAM provided "help" in the form of a substantial advance payment which Arrayit would use to finance its manufacture of the Equipment for UNAM;

b.     By withholding from UNAM and by not refunding the money UNAM paid for the Equipment, even after Mark Schena promised that Arrayit would pay it back and after Arrayit

and the Schenas each admitted that Arrayit owed it back and despite UNAM's demands for its repayment; and

c.      By Arrayit's selling UNAM's Equipment to a third party and then withholding the proceeds thereof from UNAM, aided by the Schenas, if, as Mark Schena and Arrayit stated in January 2017, the Equipment was sold after being identified to the UNAM contract.

42.      As a legal and proximate result, UNAM has been damaged in the amount of $126,515 and, pursuant to Penal Code §496(c), UNAM is entitled to three times its damages and to its attorneys' fees incurred in this action, minus a credit for $20,500 paid by Arrayit to UNAM in 2019.

WHEREFORE, plaintiff prays judgment as hereinafter set forth.

<u>SIXTH CLAIM FOR RELIEF</u>

<u>Violations of Business And Professions Code Section 17200</u>

(Against Arrayit)

43.      Plaintiff incorporates herein by reference paragraphs 1 through 42 above as though set forth in full.

44.      Beginning on an exact date unknown to UNAM but at least since September 2015, Arrayit has committed acts of unfair competition, as defined by Business and Professions Code §17200, by engaging in the following unlawful, unfair, and fraudulent practices: offering the Equipment for sale and entering into a contract to sell the Equipment to UNAM by taking full payment in advance while knowing or strongly suspecting but concealing from UNAM that Arrayit could not or would not deliver the Equipment as contracted; knowing and concealing that it would withhold or would use the money it acquired by those means for its own other purposes and benefit while at the same time representing that it would deliver the Equipment or refund the money; and then not delivering the Equipment sold and not refunding the money paid in these circumstances without any valid legal excuse.

45.     Arrayit's acts and practices, as described in paragraph 1-23 and 41 above, violate California Penal Code §§496(a) and thus constitute an unlawful business act or practice within the meaning of California Business and Professions Code §17200.

46.     Arrayit's acts and practices, as described in paragraphs 1-23 and 41 above, are unfair within the meaning of California Business and Professions Code §17200, since the actual harm to plaintiff (the loss of its money or the Equipment) outweighs any utility of Arrayit's policies or practices.

47.     Arrayit's acts and practices, as described in paragraphs 1-23 and 41 above, constitute a fraudulent business act or practice within the meaning of California Business and Professions Code §17200, as Arrayit's conduct in concealing its inability or lack of intent to perform the contract misled UNAM, resulting in actual harm to UNAM.

48.     As a result of the aforementioned unlawful, unfair, and fraudulent business practices, plaintiff UNAM suffered direct harm in the loss of its money (the $126,515 it paid Arrayit) or property (the Equipment Arrayit identified to the contract in late 2016 and early 2017 but refused to deliver or to release to UNAM).  UNAM thus has suffered injury in fact and actual harm for which it is entitled to receive restitution.  Arrayit continues to hold money belonging to UNAM in the principal amount of a least $106,015, and Arrayit would be unjustly enriched if not required to make full restitution to UNAM.

WHEREFORE, Plaintiff prays judgment as hereinafter set forth.


SEVENTH CLAIM FOR RELIEF

Aiding and Abetting Violations of Section 17200

(Against Rene Schena and Mark Schena)

49.     Plaintiff incorporates herein by reference paragraphs 1 through 48 above as though set forth in full.

50.     Defendants Mark Schena and Rene Schena were aware of Arrayit's unlawful, unfair, or deceptive business practices alleged above by virtue of their personal involvement in

the Arrayit transaction with UNAM alleged and their roles as senior corporate officers of Arrayit.

51.     Defendants Mark Schena and Rene Schena induced or aided and abetted these unlawful, unfair, or deceptive business practices by personally engaging in some of the above-alleged acts on behalf of Arrayit, as Arrayit's most senior officers and with full awareness of Arrayit's challenging financial condition, including but not limited to (i) Rene Schena's inducing a significant prepayment by direct solicitation of UNAM with the express or implied promise that the prepayment would be used to finance the manufacture of Equipment specifically for UNAM while concealing Arrayit's likely inability to deliver the Equipment in the timeframe represented, (ii) failure to ensure that UNAM's money was either dedicated solely to financing the manufacture of Equipment specifically for UNAM or refunded in full; (iii) Mark Schena's repeated false promises regarding imminent delivery of the Equipment, (iv) Mark Schena's failing or refusing to authorize the release or delivery of the Equipment to UNAM in early 2017 when he confirmed it was complete and ready for shipment from Europe (or if that was untrue, then his making that representation), and (v) Mark Schena's failing or refusing to provide UNAM the replacement equipment he said would be available a few weeks later (or if that was untrue, then his making that representation).

52.     As a result of the aforementioned inducing or aiding and abetting Arrayit's unlawful, unfair, and fraudulent business practices, plaintiff UNAM suffered direct harm in the loss of its money (the $126,515 it paid Arrayit less a credit for $20,500 refunded as alleged above) or property (the Equipment Arrayit identified to the contract in late 2016 and early 2017 but refused to deliver or to release to UNAM).  UNAM thus has suffered injury in fact and actual harm for which it is entitled to receive restitution from Rene Schena and from Mark Schena.

PRAYER

WHEREFORE, Plaintiff prays judgment as follows:

1.     On the First and Second Claims for Relief, against Arrayit for $126,515,  pre-judgment interest at the rate of 10% per annum from November 13, 2015, and such other general and compensatory damages proven at trial, minus a credit of $20,500;

2.     On the Third Claim for Relief, against Arrayit for:

    A.    $106,015 and such other general damages proven at trial; and

    B.    punitive damages;

3.     On the Fourth Claim for Relief, against Arrayit, Rene Schena, and Mark Schena jointly and severally for:

    A.    $106,015 and such other general damages proven at trial; and

    B.    punitive damages;

4.     On the Fifth Claim for Relief, against Arrayit, Rene Schena, and Mark Schena jointly and severally for:

    A.    Three times UNAM's actual damages of $106,015, totaling $318,045, pursuant to Penal Code §496(c); and

    B.    Plaintiff's reasonable attorneys' fees pursuant to Penal Code §496(c);

5.     On the Sixth Claim for Relief, against Arrayit for restitution in the amount of $106,015.

6.     On the Seventh Claim for Relief, against Rene Schena and Mark Schena jointly and severally for restitution in the amount of $106,015; and

7.     On all Claims for Relief:

    A.    For costs of suit and interest; and

    B.    For such other and further relief as the Court may deem just and proper.

<u>DEMAND FOR JURY TRIAL</u>

Plaintiff demands a trial by a jury for all issues so triable.

Dated: February 18, 2020             GAMBEL LAW

                         /s/ Adam F. Gambel

               _____

                      Adam F. Gambel
                     Attorney for Plaintiff
               UNIVERSIDAD NACIONAL
               AUTÓNOMA DE MÉXICO

COMPLAINT

**EXHIBIT A**

CONFIDENTIAL

# NanoPrint LM 60-2 Microarray Printer

## Confidential Price Quotation

### Prepared Especially For:

Dr. Jorge Ramirez
Unidad de Microarreglos
Instituto de Fisiologia Celular
UNAM, AP 70242, CP 04510
Ciudad Universitaria No. 3000, Col. Copilco
Delegación Coyoacán, Mexico D.F.
Mexico
Tel 56225753
FAX 56225611
e-mail jramirez@ifc.unam.mx
http://microarrays.ifc.unam.mx/

| | |
|---|---|
| Date: | September 4, 2015 |
| Author: | Rene Schena |
| Version: | 01232015 |
| Validity: | Offer valid through December 31, 2015 |

© Copyright Arrayit Corporation 2015

All rights reserved. No part of this document and the software described in it may be copied, reproduced, stored in a retrieval system, or transmitted in any form or by any means, electronic, mechanical, by photocopying, recording or otherwise, in whole or in part, without prior written permission of the publishers.

CONFIDENTIAL

## System Layout for this Quotation





Removable Printhead
Part Number NPSPH48



CONFIDENTIAL

# NanoPrint LM 60-2

| Part Number | Description | List Price | UNAM Price |
|---|---|---|---|
| LM60-2 | The NanoPrint LM 60-2 Microarray Printer | $179,430 | $126,800 |

- The NanoPrint Microarray Instrument with 500 nanometer encoded linear motor motion control technology X & Y Axis
- 250 Nanometer Z Axis Encoder with profile, extend and retract speed controls
- Version 2 motors, controllers and Ethernet connectivity
- NanoPrint Professional Series Micro Spotting Device Printhead (removable) US Patent No. 6,101,946
- 1 license to use US Patent 6,101,946 for Research Purposes Only
- Configurable to 60-slide-position worktable
- Ability to print from 96 or 384 well plates
- Unlimited telephone and email technical support
- Configurable to 3 source plate microplate positions
- 1 Wash/Dry Station, 1 Sonication Wash Station
- Liquid Filtered Humidity Control
- Microarray Manager Software GUI, including reprint/repair function and GAL file generation.
- Flat Screen Monitor for Computer Control Module
- Computer Control Module with Windows OS
- 1-year warranty, parts and technical support (946 Pin warranty covered separately)
- Shipping via truck to Mexico City, installation and training (two days)

| | |
|---|---|
| QUOTE NUMBER: | UNAM090415 |
| DELIVERY: | Approximately 8 weeks from receipt of PO and Down Payment |
| INCOTERMS: | FOB Sunnyvale, California, USA |
| OTHER: | This product is made in USA. |

| | |
|---|---|
| **Payment Terms:** | 50% down payment with Purchase Order |
| | 50% net 30 days from delivery |

CONFIDENTIAL

---
**Terms & Conditions**
---

<u>**Validity of this Quotation**</u>
This quotation is an invitation to offer only.  It shall remain firm for 30 days after issuance, unless modified in writing by *ARRAYIT CORPORATION* prior to acceptance of contract offer.  This quotation is subject to revocation prior to its expiration upon notice to *Buyer*. Upon acceptance of this offer by *Buyer,* this document, including all its attachments, will become a binding agreement between the parties.  This quote replaces any previous quotes sent to *Buyer* that have not already been accepted.

<u>**Warranty**</u>
Software and hardware products manufactured or supplied by *ARRAYIT CORPORATION* are warranted to perform according to the established specifications and technical descriptions.

All hardware and software products are warranted for a period of 12 months from time of acceptance by *Buyer*.  This contract provides one full year warranty including parts for maintaining your purchased system or components in working condition.  *ARRAYIT CORPORATION* will pay all expenses associated with this warranty, including airfare, accommodations, meals, and other expenses.

This contract does not include an additional hardware and software warranty for third party devices purchased through *ARRAYIT CORPORATION*, which are provided with their own OEM warranty from the manufacturing company, such as the system personal computer.

Any catastrophic failures will be considered an emergency and a *ARRAYIT CORPORATION* service engineer will be in contact as quickly as possible (between the hours of 8:30 AM – 4:30 PM PST) after notification to resolve the problem by phone.  Typically, most problems can be resolved over the telephone. However if it is necessary to replace parts, loaner parts or components will be sent by express shipment from *ARRAYIT CORPORATION* or the device manufacturer to replace the defective parts or components while these items are being repaired.  The repaired original parts or components will be returned to the customer and the loaner parts or components will be returned to *ARRAYIT CORPORATION* or another specified location.  Shipping costs for the loaner or replacement parts that are covered under warranty are paid by *ARRAYIT CORPORATION*

The warranty period will begin upon final acceptance testing at Buyer's facility.  In the event that Arrayit Corporation has delivered and installed the system and final acceptance takes longer than 30 days to complete, the warranty period will begin 30 days after installation of the system.

<u>**Software License Terms**</u>
The purchase of a software product must be understood to mean the purchase of a license, which only gives the right to use one copy of the software product on one computer.  *ARRAYIT CORPORATION* grants to *Buyer,* a non-exclusive, paid-up license to use one copy of the software listed on the Price Quotation attached hereto ("the Software") on one computer (the "Software license"), subject to the following provisions:

a.      Except as otherwise provided in the Software License, applicable copyright laws shall apply to the Software.

CONFIDENTIAL

b.      Title to the medium on which the Software is recorded (cassette and/or diskette) or stored (ROM) is transferred to *Buyer*, but no title to the Software.

c.      *Buyer* may use Software on a multi-user or network system only if either, the Software is expressly labeled to be for use on a multi-user or network system, or one copy of the Software is purchased for each node or terminal on which Software is to be used simultaneously.

d.      *Buyer* shall not make, manufacture, or reproduce copies of Software except for use on one computer and as if specifically provided in the Software License. *Buyer* is expressly prohibited from disassembling the Software.

e.      *Buyer* is permitted to make additional copies of the Software only for backup or archival purpose.

f.      All copyright notices shall be retained on all copies of the Software.

## Prices

All prices are quoted FOB, *ARRAYIT CORPORATION* Inc., Sunnyvale, CA, USA.  Any shipping charges, taxes, customs duty or other fee of any nature imposed upon this transaction by any federal, state or local government authority shall be paid by *Buyer*, in addition to the price quoted or invoiced.

## Responsibility of *ARRAYIT CORPORATION*

The responsibility of *ARRAYIT CORPORATION* is to commit itself in:

a.      Delivery of the products as described in the Technical descriptions and other written specifications and the Warranty Addendum.

b.      Meeting the requirements of any additional written documents of System Requirements for Acceptance that have been agreed upon in writing and signed by both parties.

c.      *ARRAYIT CORPORATION* will be responsible for all parts of the Automated System that have been delivered by *ARRAYIT CORPORATION*

d.      Notify *Buyer* of any changes to system specifications during system development and obtain agreement of changes.

## Responsibility of *Buyer*

The responsibility of *Buyer* is to commit itself in:

a.      Providing *ARRAYIT CORPORATION* with all the necessary information regarding the procedures, the equipment, the facilities and the regulations involved in the development of the system.

b.      Supplying all the equipment necessary to run the system that is required but not included in the Price Quotation and/or Product Specifications & Proposal.  Any equipment that is not included in the Price Quotation or described in the Technical Specifications in the Product Specifications & Proposal Document will be identified and approved by *ARRAYIT CORPORATION* before execution of this agreement.

CONFIDENTIAL

c.      Supplying and shipping, at its own expenses, to Sunnyvale, CA all the equipment necessary for the integration and validation by *ARRAYIT CORPORATION*

d.      Supplying any document of System Requirements for Acceptance to be agreed upon and signed by both parties within 15 days of the execution of this project.

e.      Execute any system or Acceptance Testing at *Buyer* facility during verification period and perform any final factory acceptance testing and supplying all of the supplies including disposables, chemicals, etc. to perform the testing.

f.      Pay promptly according to the agreed terms of payment.

**Changes to Proposed System or System Process**

a.      Changes to the proposed system or system process are accepted for a period of 15 days after the execution of this project.

b.      Pricing adjustments may be required based on the specific changes to the hardware/software components, and in this event, ARRAYIT CORPORATION will confirm with Buyer such changes, the effect on costs and/or delivery, and obtain *Buyer's* agreement to same.

c.      After the 15-day period, additional changes will be accepted but could affect proposed system delivery time.

**Payment Terms For Completed System**

Payment Terms:          50% with Purchase Order
                        50% net 30 days from delivery

Delivery is defined as installation on-site at *Buyer's* facility, including all of the required hardware and software necessary to fulfill the specifications outlined in this Product Specifications & Proposal document and Price Quotation.

**EXHIBIT B**



Arrayit Corporation
927 Thompson Place
Sunnyvale CA 94085 USA
Tax ID ███████
Phone (408) 744-1331
Fax (408) 744-1711
Website http://arrayit.com

**INVOICE# TC17471**

September 30, 2014

**Sold to:**

Universidad Nacional Autonoma de Mexico
RFC UNA2907227Y5
Av. Universidad 300
Ciudad Universitaria, Coyoacan
Mexico DF CP 04510
MEXICO

**Ship to:**

Universidad Nacional Autonoma de Mexico
RFC UNA2907227Y5
Av Universidad 300
Ciudad Universitaria, Coyoacan
Mexico DF CP 04510
MEXICO

**Description:**

| | |
|---|---|
| Product: | NanoPrint LM60 Microarray Printer including one year warranty, parts and technical support, shipping, installation and training |
| Catalog ID: | LM60 |
| Quantity: | 1 |
| Price: | USD 126,515 delivered, duty unpaid Mexico |
| Country of Origin: | Made in USA |

**Banking Details:**

Please remit to:

███ Bank
██████████
Santa Clara CA 95051 USA
ABA# ███████
SWIFT Code ████████

Beneficiary:

Arrayit Corporation
927 Thompson Place
Sunnyvale CA 94085 USA
Account# ████████

Rene Schena, CEO

**EXHIBIT C**

<u>TOLLING AGREEMENT</u>

This agreement ("Agreement"), made effective as of December 21, 2018, is entered into by and between Universidad Nacional Autónoma de México ("UNAM") on one hand and each of the following on the other hand: Arrayit Corporation, René Schena, and Mark Schena (collectively referred to as the "Arrayit Parties"), all collectively "the Parties", who each agree as follows:

As consideration for the deferral of legal proceedings by UNAM during the term of this Agreement, to which UNAM agrees, the Parties agree that all periods of limitation (statutory or otherwise) and any defenses based on laches or any similar legal theory ("Laches Defenses") affecting any claims or causes of action which UNAM may have against any of the Arrayit Parties shall be tolled from the effective date of this Agreement (December 21, 2018) until the earlier of (i) July 15, 2019, or (ii) fourteen (14) days after written notice of termination of this Agreement is given by any of the Arrayit Parties to UNAM or by UNAM to any of the Arrayit parties at their following respective addresses and numbers by overnight courier, fax, or email:

<u>UNAM</u>:                                          <u>Arrayit Parties</u>:

Dr. Octavio Tonatiuh Ramirez                  Ms. René Schena
Instituto de Biotecnologia                    Mr. Mark Schena
Universidad Nacional Autónoma                 Arrayit Corporation
  de México
Av. Universidad 2001. Col. Chamilpa           927 Thompson Place
Cuernavaca, Morelos                           Sunnyvale, CA  94085
62210 México
Fax: +52 (777) 3138811 / 3172388              Fax: 408-744-1711
Email: tonatiuh@ibt.unam.mx                   Email: rene@arrayit.com

The Arrayit Parties further hereby waive any periods of limitation and any Laches Defenses based in whole or part on the period of tolling. By entering into this Agreement, none of the Parties waives any statute of limitations defense based on any claim that the applicable statute of limitations expired before the effective date of this Agreement.

The Parties acknowledge and agree that no Party admits any liability to any other Party, and the execution of this Agreement shall not be construed as an admission of the existence of a valid claim or of liability by any Party. In particular, and not by way of limitation as to the foregoing, the execution of this agreement individually by René Schena and by Mark Schena does not  constitute, and shall not be construed as, an admission of personal liability by either of them. This Agreement shall not be admissible in evidence in

(continued on p.2)

Tolling Agreement
January 23, 2019

any legal proceedings between the parties for any purpose other than to prove the tolling of
a statute of limitations or of a Laches Defense.

This Agreement shall be governed by and construed in accordance with the laws of
the State of California without regard to its conflicts of laws analysis.

This Agreement may be executed in multiple counterparts, each of which shall be
deemed to be an original, but all of which together shall constitute a single instrument.
Facsimile or scanned signatures are acceptable and deemed original signatures.

DATED: Feb 13 , 2019

DATED: Feb 8 , 2019

DATED: Feb 8 , 2019

DATED: Feb 8 , 2019

UNIVERSIDAD NACIONAL AUTÓNOMA
DE MÉXICO

By:
Name/Title: Octavio T Ramirez
Director, Instituto de Biotecnologia, UNAM

ARRAYIT CORPORATION

By:
Name/Title: René Schena / CEO

RENÉ SCHENA

MARK SCHENA